JS 44   (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

HARRIS FOGEL

**(b)** County of Residence of First Listed Plaintiff *Delaware County*
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
David McComb, Esq., Zarwin, Baum, 1818 Market St., 13th Fl., Phila., PA 19103  (215) 569-2800

## DEFENDANTS

THE UNIVERSITY OF THE ARTS, ANNE MASSONI and JENNIFER LITTLE

County of Residence of First Listed Defendant *Philadelphia*
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**  **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane  ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability  ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander  Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability  ☐ 368 Asbestos Personal Injury Product | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 340 Marine  Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability  **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle  ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle  ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | Product Liability  ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 360 Other Personal Property Damage | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | Injury  ☐ 385 Property Damage | Leave Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury - Product Liability | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| | Medical Malpractice | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**  **PRISONER PETITIONS** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights  **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 220 Foreclosure | ☐ 441 Voting  ☐ 463 Alien Detainee | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment  ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations  ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment  ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | | **Other:** | ☐ 462 Naturalization Application | |
| | ☐ 446 Amer. w/Disabilities - Other  ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | ☐ 448 Education  ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation - Transfer
- ☐ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Education Act Amendment of 1972

Brief description of cause:
Employment discrimination - Title IX

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE   11/28/2018

SIGNATURE OF ATTORNEY OF RECORD   *[signature]*

### FOR OFFICE USE ONLY

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**DESIGNATION FORM**
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: ___ Harris Fogel, 1006 Edgewood Drive, Springfield, PA 19064 ___

Address of Defendant: The University of the Arts, 320 S Broad St., Phila PA 19102, Anne Massoni, 1615 Moyamensing Ave., Phila., PA 19148, Jennifer Little, 1028 Warfield Ave., Apt 2, Oakland, CA

Place of Accident, Incident or Transaction: ___ Philadelphia, PA ___

---

**RELATED CASE, IF ANY:**

Case Number: _____ Judge: _____ Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?  Yes ☐  No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?  Yes ☐  No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?  Yes ☐  No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: __11/28/18__ _____*D.F. McC*_____ __35754__
Attorney-at-Law / Pro Se Plaintiff    Attorney I.D. # (if applicable)

---

**CIVIL: (Place a √ in one category only)**

A.  *Federal Question Cases:*

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
    *(Please specify):* _____

B.  *Diversity Jurisdiction Cases:*

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
    *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, ___ David McComb ___, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: __11/28/2018__ _____*D.F. McC*_____ __35754__
Attorney-at-Law / Pro Se Plaintiff    Attorney I.D. # (if applicable)

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Harris Fogel | : | CIVIL ACTION |
| | : | |
| v. | : | |
| The University of the Arts, Anne Massoni | : | |
| and Jennifer Little | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.          ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
    exposure to asbestos.          ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)          ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.          (✓)

| | | |
|---|---|---|
| 11/28/18 | _David F. McComb_ | Plaintiff, Harris Fogel |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-569-2800 | 267-765-9678 | dfmccomb@zarwin.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

HARRIS FOGEL,                                   :
1006 Edgewood Drive                             :
Springfield, PA 19064                           :
                                                :
        Plaintiff,                              :
    v.                                          :   CIVIL ACTION NO. 18-cv-
                                                :   JURY TRIAL DEMANDED
THE UNIVERSITY OF THE                           :
ARTS,                                           :
320 South Broad Street                          :
Philadelphia, PA 19102,                         :
                                                :
ANNE  MASSONI                                   :
1615 East Moyamensing Avenue,                   :
Philadelphia, PA 19148                          :
                                                :
JENNIFER LITTLE,                                :
1027 Warfield Ave. Apt. 2                       :
Oakland, CA 94610                               :
                                                :
        Defendants.                             :

## **COMPLAINT**

Professor Harris Fogel ("Plaintiff" or "Fogel") through his undersigned counsel, files this

civil complaint against defendants The University of the Arts ("UArts"), its employee, Anne

Massoni ("Massoni'), and Jennifer Little (Little'), an Associate Professor of Art and Graphic

Design at the University of the Pacific and, in support thereof, avers as follows:

## I.  **NATURE OF THE ACTION**

1.      Professor Harris Fogel, a former Professor of Photography at UArts seeks

damages from UArts as it is responsible for the actions of a small group of administrators who

discriminated against him, a tenured faculty member, when they purported to give credence to a

completely false, unsupported, undocumented and implausible allegation of sexual harassment

from defendant Jennifer Little and another non student, and then used those allegations to justify

their termination of him in violation of their own rules governing discipline of tenured faculty. In doing so, UArts, violated its legal duty under Title IX by discriminating against plaintiff on the basis of his gender and breached their contractual and other legal obligations to him.

2.     Professor Fogel seeks damages from defendants Massoni and Little for defaming him and conspiring to cause him to lose his position with the UArts.

## II.     THE PARTIES

3.     Plaintiff is a resident of Pennsylvania residing at 1006 Edgewood Drive Springfield, PA 19064.

4.     Defendant Massoni is a resident of Pennsylvania residing at 1615 East Moyamensing Avenue, Philadelphia, PA 19148.

5.     Defendant UArts is a private institution of higher learning with a principal address of 320 South Broad Street Philadelphia, PA 19102. It describes itself as the only institution of its kind in the nation, offering programs in design, fine arts, media arts, crafts, music, dance, theater and writing.

## III.     JURISDICTION AND VENUE

6.     Plaintiff invokes this Court's original jurisdiction under Title IX of the Education Act Amendments of 1972, 20 U.S.C. §1681, et seq.

7.     Pursuant to 28 U.S.C. §1391, venue for this action properly lies in this district because a substantial part of the events or omissions giving rise to the claims set forth below occurred in this judicial district.

8.     Plaintiff also invokes this Court's jurisdiction over related state common law and statutory claims under the principles of ancillary and/or pendent jurisdiction pursuant to 28 U.S.C.§1367. 25.

9.     Plaintiff also invokes this Court's jurisdiction pursuant to 28 U.S.C.§1332, diversity of citizenship, with the amount in controversy exceeding $75,000.00, plus interest and costs as to defendant Little as she is a resident of the State of California.

## IV.  STATEMENT OF FACTS

10.     Prior to the events that give rise to this lawsuit, Little and Professor Fogel were professors of photography at different universities and had been professionally acquainted for several years. Professor Fogel had invited Little to exhibit at UArts in 2015, and Little often sought Fogel's advice on professional and personal topics. She asked him to be a reference for a job search she was about to start as she wasn't happy at her university, and was looking for a new position, despite having been granted tenure. Professor Fogel regarded Little as a friend and colleague, but he had no romantic interest in her whatsoever and is happily married to his wife, Nancy, and the father of grown children.

11.     Despite what appeared to Professor Fogel to be a collegial professional relationship, including a request from Little to collaborate, Little, however, initiated the process by which Professor Fogel was terminated when, on December 10, 2017, she wrote to the UArts Title IX Coordinator and Diversity Director Lexi Morrison and asserted that on some unspecified day in March 2016 Professor Fogel had greeted her with a kiss upon his seeing her at the Society for Photographic Education ("SPE") Conference in Las Vegas, NV. According to Little, the kiss was unwelcome and took place in the daytime in the lobby of the hotel where the conference was being held.

12.     Notably, Little did not complain or say anything to Professor Fogel about his greeting her in that manner, and she and Professor Fogel thereafter attended various functions

together in public at the SPE Conference. Little posted Professor Fogel's photographs of the conference that included her to her Facebook account.

13.     After receiving the report from Little, Morrison then received a report from Anne -Laurie Autin ("Autin'), (a neophyte photographer) who complained that while she was in attendance at a FotoFest conference in March 2016 as a photographer, Professor Fogel had served as a portfolio reviewer of her work.

14.     At FotoFest, photographers and reviewers typically meet in a large conference room or hotel ballroom and the reviewees meet with a carefully selected pre-set of reviewers who give an informal, ungraded critique of their work. The setting is analogous to a "speed dating" program, with the aim of providing the participants multiple informal twenty-minute critiques of their work from a variety of experts in the field including curators, historians, editors, collectors, gallerists, and publishers from throughout the world, in an informal setting free of formal grading and written review.

15.     According to Autin, Professor Fogel reviewed her photography portfolio without incident and then, as the review session was ending, he offered her materials about the university, and so as not to end on a negative note, a copy of his business card as he stood up to say goodbye. As he was blindly retrieving a business card from his right pocket inside his sport coat, he inadvertently pulled out his hotel room key and jokingly said when he realized it wasn't his business card, "here is my business card – oops - my room key." Notably, the hotel room key and business card are of very similar size and shape.

16.     Professor Fogel was embarrassed and immediately laughed aloud, and Autin also joined in laughing at what was obviously an inadvertent and trivial incident. He then put his

room key back in his pocket, and reached into his pocket and gave her his business card. She left, and he then met with the next photographer waiting their turn to be reviewed.

17.     Professor Fogel had no further contact with Autin, until she sent an unsolicited email to him on March 23, 2016, to thank him for his review of her work in glowing terms. Professor Fogel, sent a reply e-mail on May 1, 2016, with a form-letter response, thanking her for her email. He did not initiate any contact with Autin, all contact was initiated by Autin. There has been no contact since May 1, 2016.

18.     However, on December 11, 2017, some 18 months later, Autin wrote to Morrison and said that she understood Morrison was investigating a formal sexual harassment complaint against Professor Fogel and wanted to report the incident to her.

19.     Ms. Autin said in her report that while she initially thought that what Professor Fogel said may have been a joke, after discussing the incident with numerous other women at the conference, including Ms. Little, who told Autin that Professor Fogel "forced himself physically on her," Autin decided to report the incident.

20.     Following her receipt of these reports, Morrison purportedly began an investigation into what had taken place and, on January 23, 2018 issued a determination that "Professor Fogel had committed serious violations of the University's Sexual Misconduct, Sexual Harassment, and Other Forms of Harassment Policy." Thereafter on March 8, 2018, UArts Dean Mark Campbell upheld Morrison's conclusions and based upon her report and also purportedly on unrelated issues of performance, terminated Professor Fogel's employment.

21.     In investigating and adjudicating the sexual misconduct allegations against Professor Harris Fogel, the burden was on UArts "to gather sufficient evidence to reach a

fair, impartial determination as to whether sexual misconduct has occurred and, if so, whether a hostile environment has been created that must be redressed."

22.    The January 23, 2018 determination by Morrison, that Professor Fogel committed "a sexual assault" of Professor Jennifer Little in March 2016 in the lobby of a Las Vegas hotel during the Society for Photographic Education (hereafter "SPE") conference was not supported by the evidence.

23.    Professor Little further alleged that she reported the forced non-consensual kiss to Professor David Graham, another faculty member at UArts. Professor Little claims that she told Professor Graham about the forced non-consensual kiss soon after it happened while they were still at the SPE conference. However, Professor Graham told Title IX Coordinator Morrison that he had no recollection of Professor Little telling him such a thing.

24.    Professor Little also claims that she reported the forced non-consensual kiss to a group of women at the FotoFest 2016 conference in Houston, Texas, several weeks after the alleged kiss happened. However, one of the women in the group, Jennifer Colten, a professor at Washington University, told Title IX Coordinator Morrison that she did not recall Professor Little saying that Professor Fogel had forcibly kissed her. The witnesses in the report by Morrison were Susan Burnstine, David Johnson, Etha Piazza, Michael Crouser, Jennifer Colten.

25.    The only person to corroborate Professor Little's claim that she reported the alleged forced non-consensual kiss at the FotoFest 2016 conference in Houston is the other complainant against Professor Fogel, Anne-Laure Autin. Ms. Autin's corroboration of Professor Little's allegation is suspect, however, because Professor Little and Ms. Autin

communicated with each other before filing their complaints and filed their complaints almost contemporaneously (one day apart). Title IX Coordinator Morrison made no attempt, such as obtaining copies of the electronic mail correspondence between the two complainants, to investigate improper collusion between the two complainants.

26.     Professor Little waited approximately 21 months to report Professor Fogel's alleged forced non-consensual kiss.  Professor Little's only explanation for this extreme delay in reporting the alleged misconduct is that she "tolerat[ed]" Professor Fogel's kiss in exchange for his support and professional advice."

27.     Morrison's acceptance of this view was not a "reliable decision" supported by available evidence.

28.     In short, Morrison failed to synthesize the evidence in order to make a reliable, objective evaluation of Professor Little's credibility *(i.e.,* that it was suspect and compromised), which resulted in a finding that Professor Little's allegation was founded, even though there was insufficient evidence to support it.

29.     UArts also denied Professor Fogel his due process rights because Morrison's investigation did not provide Professor Fogel with adequate notice of the charges against him. *See* 2017 OCR Q&A, Question 6, page 4 (a school must provide the respondent "the date and location of the alleged incident"). In this case, the Title IX Coordinator failed to provide Professor Fogel with the exact date, time, and location that the alleged sexual assault *(i.e.,* the forced non-consensual kiss alleged by Professor Jennifer Little) occurred. The Title IX Coordinator's failure to investigate the date, time, and location of the alleged incident constituted a failure to "analyze and document the available evidence ... both inculpatory and exculpatory." *Id.* (emphasis added).

30.     Morrison's investigation failed to locate and interview all the members of the group of women and men at the 2016 Houston FotoFest Conference to whom Professor Little allegedly reported Professor Fogel's forced non-consensual kiss. This was another failure to analyze and document potentially exculpatory evidence.

31.     Morrison's investigation denied Professor Fogel due process because, about the allegations of sexual harassment made by Autin, the Title IX Coordinator failed to gather glaringly obvious exculpatory evidence that would have cast doubt on the veracity of Ms. Autin's allegation. Ms. Autin informed the Title IX Coordinator that she had reported the alleged room key incident to Marta Sanchez Philippe, the Meeting Place Coordinator for FotoFest, on the same day that it allegedly happened. However, Ms. Autin admitted to Title IX Coordinator Morrison that she told Ms. Sanchez Philippe, that it was possible that Professor Fogel's remark about the room key was a "joke" and that his intent was not malicious.

32.     FotoFest retained a law firm to investigate the incident and that the law firm investigated and concluded that there was insufficient evidence to substantiate Ms. Autin's allegation about Professor Fogel. Ms. Autin's contemporaneous and very contradictory report of the incident to Ms. Sanchez Philippe (and perhaps the outside investigator employed by FotoFest) certainly casts doubt on the veracity of her allegation. The Title IX Coordinator's failure to obtain this clearly exculpatory evidence denied Professor Fogel the opportunity to defend himself against the allegation.

33.     The Title IX Coordinator's investigation failed to exclude from consideration multiple unproven, prejudicial allegations against Professor Fogel. The Title IX Coordinator's failure to exclude this evidence constituted a failure "to

objectively evaluate the credibility of parties and witnesses" with the result that Professor

Fogel was denied the opportunity to defend himself against the unsubstantiated,

extremely prejudicial allegations.

34.    The unsubstantiated, gender-based prejudicial statements about Professor

Fogel made by Professor Little and relied upon by Morrison were as follows: (1) he has

difficulty working with a woman in a position of authority over him; (2) that other

unidentified women at the 2016 Houston FotoFest Conference had heard of Professor

Fogel; and (3) that Professor Fogel engaged in "typical male verbal flirting behavior. The

unsubstantiated, gender-based prejudicial statements about Professor Fogel made by

Anne-Laure Autin and relied upon by Morrison were as follows: (1) most female

photographers at the 2016 Houston FotoFest Conference guessed that it was Harris Fogel

when Autin recounted her allegation that he offered her his room key; (2) that an

unidentified male photographer stated that he saw Professor Fogel acting in a "sleazy"

manner with unidentified female photographers at the 2016 Houston FotoFest

Conference; (3) that an unidentified female photographer told Autin that Professor Fogel

was "very flirtatious" and she thought he gave her a show "because she was young, cute,

and bubbly."

35.    Fogel never said "I'd like you to have my (room) card", instead he ended a

review with a "Thank You" and handed the participant his card, and said "Here is my card,

please feel free to stay in touch, and keep me appraised of your work in the future" And then

"Thank you, Good Bye". This is similar to the email he responded to Autin with.

36.    Professor Fogel made Title IX Coordinator Morrison aware of his concerns on a consistent basis during each and every interview and meeting, about her consideration and reliance upon gender-based stereotypical accusations, such the "typical male verbal flirting behavior" comment by Professor Little in a Skype conference on January 12, 2018, but Morrison did not address Professor Fogel's concerns other than to say that she would consider addressing the concern in a footnote to her investigation report. The consideration of Professor Little's comment that Professor Fogel engaged in "typical male verbal flirting behavior" is particularly troublesome since the OCR's guidelines specifically warn schools not to engage in decision-making techniques or approaches that apply sex stereotypes or generalizations..."

37.    UArts investigation denied Professor Fogel due process by refusing to permit him to have a copy of the Title IX Coordinator's 12-page investigation report. Both Professor Fogel and his counsel requested a copy of the report on multiple occasions and were repeatedly told that it was the UArts' practice not to provide respondents with a copy of the investigation report. Counsel for Professor Fogel suggested that UArts provide Professor Fogel with a redacted copy of the report to protect the identity of witnesses, but UArts officials refused to give Professor Fogel even a redacted copy.

38.    The Title IX coordinator evaluated the claims of sexual harassment and assault under a preponderance of the evidence standard rather than a clear and convincing evidence standard, which is the burden of proof currently recommended by the Department of Education. *See* 2017 OCR Q&A, Question 8, page 5. The UArts' investigation denied Professor Fogel due process because it applied a lesser standard of proof-preponderance of the evidence - than the one it applies to other allegations of professorial misconduct.

39.     Professor Fogel was denied due process because he was not provided the opportunity to respond to the investigation report in writing in advance of the decision of responsibility and/or at a live hearing to decide responsibility. *See* 2017 OCR Q&A, Question 8, page 5.

40.     Professor Fogel was denied due process because he was denied the opportunity to present witnesses who would have given exculpatory evidence to the Title IX Coordinator. *See* 2017 OCR Q&A, Question 4, page 3. In a meeting with Title IX Coordinator Morrison on December 15, 2017, Professor Fogel gave her the name of witnesses and Morrison chose not to interview them.

41.     Professor Fogel was denied Due Process because the ultimate decision-maker regarding the allegations, Dean Mark Campbell, has a documented history of bias and hostility against Professor Fogel. Department of Education regulations require that a university proceeding which arises from an allegation of dating violence, domestic assault, sexual assault, or stalking must "[i]nclude a prompt, fair, and impartial process from the initial investigation to the final result." *See* 34 C.F.R.

42.     Dean Campbell's March 8, 2018 letter to Professor Fogel clearly demonstrates that he used the sexual misconduct allegations made against Professor Fogel as a pretext for terminating Professor Fogel because Dean Campbell believed that Professor Fogel was "obstructionist", difficult to supervise, and not sufficiently collegial. Because it would have been far more difficult -- if not impossible -- to prove his allegation that Professor Fogel did not adhere to UArts' "basic requirements of collegiality," Dean Campbell improperly used the sexual misconduct allegations, with their lower standard of

proof, as a pretext to terminate Professor Fogel.

43.   Professor Fogel was denied due process and an equitable resolution of the complaints against him because the UArts neither considered nor offered him an informal resolution of the complaints. *See* 2017 OCR Q&A, Question 7, page

44.   Neither complainant is an employee of UArts and both allegations largely were based upon speculation on the part of the complainants as to Professor Fogel's motivations *(i.e.,* whether he intended to seek sexual favors from either complainant), rather than anything he did.  Further the kissing a colleague in a social greeting is commonplace behavior among UArts' faculty members and Board members, and staff, as it is in many social settings. Professor Fogel has been kissed by professional colleagues, including his peers at UArts, literally thousands of times. Autin's report regarding the room key incident was not regarded by her as anything other than an awkward joke when it occurred.

45.   Imposing the sanction of termination from Professor Fogel's employment at UArts was not "a proportionate response to the violation." 2017 OCR Q&A, Question 9, page 6. Even if the decision-maker determined that there was sufficient evidence to warrant a finding of responsibility, Professor Fogel should have been offered the opportunity to engage in sensitivity training and to correct any behavioral issues affecting his employment.

46.   Professor Fogel is 59 years-old. He has two children in college. He worked at The UArts for twenty-two years. To terminate his employment as a result of two unsubstantiated and very minor allegations of conduct that cannot fairly be claimed to rise to the level of sexual misconduct simply was not proportionate to the violation.

47.   The UArts investigation denied Professor Fogel due process by employing a

Title IX Coordinator who was not properly trained in conducting Title IX investigations. The Title IX Coordinator's lack of proper training was patently obvious from the fact that she systematically failed to gather exculpatory evidence, objectively evaluate the credibility of witnesses, and synthesize all the available evidence, both inculpatory and exculpatory with the result that Professor Fogel was denied an equitable resolution of the complaints against him.

## V.    CAUSES OF ACTION

### COUNT I
### Violation of Title IX

48.    Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

49.    Title IX of the Education Act Amendment of 1972, 20 U.S.C. § 1981, et seq. ("Title IX"), provides in relevant part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."

50.    UArts receives substantial federal funding.

51.    Title IX is enforceable through an implied private right of action affording an individual discriminated against due to his gender damages and equitable relief.

52.    Courts recognize violations on reverse Title IX claims under several theories including erroneous outcome, selective enforcement, arcane assumptions and deliberate indifference. Plaintiff makes a claim of discrimination under each of those theories.

53.    Both the Department of Education and the Department of Justice have promulgated regulations under Title IX that require a school to "adopt and publish grievance procedures providing for the prompt and equitable resolution of student...complaints alleging any action which would be prohibited by" Title IX or its regulations. 34 CFR Sec. 106.8(b) (Dep't of

Ed); 28 CFR Sec. 54.135(b) (DOJ). These actions include any form of sexual touching. *See generally*, U.S. Dep't of Education, Office for Civil Rights, Revised Sexual Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties--Title IX (2001) at 19-20, 21 & nn. 98-101. (Guidance)

54.     The procedures adopted by Title IX covered schools must not only "ensure the Title IX rights of the complainant," but must also "accord[] due process to both parties involved" (Guidance, id at 22).

55.     These procedures that in the view of the Guidance accord due process when well instituted and aptly followed, must include, at a minimum: "Adequate reliable and impartial investigation of complaints, including: the opportunity to present witnesses and other evidence." (Guidance, Id at 20).

56.     A school also has a Title XI-mandated obligation to make sure that all persons handling these procedures "have adequate training as to what conduct constitutes sexual harassment, which includes 'alleged sexual assaults.'" (Guidance, id at 21).

57.     Based on the foregoing averments of fact, defendant UArts has deprived Plaintiff on the basis of his sex of his Title IX rights, of his statutory due process rights, and equal protection through the improper, malicious, sex-based application of its policies for handling sexual assault which led to the erroneous outcome in this matter.

58.     UArts initiated and conducted the investigation and subsequent hearing of Little and Autin's complaints in a manner that was biased against Plaintiff due to his sex. Among other things, Anne Massoni, Fogel's Department head and a person believed to have been instrumental in the UArts' actions against Fogel, repeatedly had demonstrated an anti-male bias toward Fogel and other males.

59.     Plaintiff was found to have committed an offense by an uninformed investigator, who relied on a flawed investigative file, and absent any credible evidence of wrongdoing, ignored evidence.

60.     By using a discredited single investigator/adjudicator model, UArts allowed Morrison to perform a flawed investigation and then rely upon the flawed investigation to come to an erroneous and biased conclusion.

61.     Due to Plaintiff's gender, UArts imposed sanctions on Plaintiff that were excessively severe because of his sex in violation of Title IX.

62.     UArts improperly and illegally based its investigation and conclusions upon gender stereotypes that Professor Fogel's naturally outgoing and joking manner were predatory and seductive behavior even though nothing contained in UArts' investigation and conclusions contain a shred of overtly sexual conduct on the part of Professor Fogel.

63.     As a direct and proximate consequence of UArts' Title IX violations, Plaintiff has sustained significant damages including termination of his employment as a tenured professor.

64.     Plaintiff has also suffered monetary damages, profound emotional distress, loss of educational opportunities, and other direct and consequential damages. Fogel's physical health suffered and his professional opportunities such as exhibitions, teaching, lecturing, and grants largely disappeared as a result of defendants' actions.

## COUNT II
## Breach of Contract

65.     Plaintiff incorporates each of the paragraphs above as if fully set forth herein.

66.     At all times relevant hereto, a contractual relationship existed between UArts and Plaintiff through, inter alia, UArts written policies regarding discipline of tenured faculty members and handling of sexual harassment complaints.

67.     UArts was required to act in accordance with that contract.

68.     For all the reasons set forth above, UArts has materially breached its contracts with Plaintiff by failing to comply with policies and procedures governing discipline of tenured faculty members and handling of sexual harassment complaints.

69.     As a direct, proximate and foreseeable consequence of UArts numerous material breaches, Plaintiff has sustained significant damages including, but not limited to loss of his tenured professorship.

70.     As a consequence of these breaches with a resulting loss of lifetime earnings, loss of education opportunities, pain and suffering, and other direct and consequential damages.

71.     Plaintiff is entitled to recover damages for UArts' breach of its contractual obligations and duties including specific performance of the contract.

## COUNT III
### Negligence

72.     Plaintiff incorporates each of the above paragraphs as if fully set forth herein.

73.     In the event the Court were to find that no contracts exist between Plaintiff and Defendant, UArts owed duties of care to Plaintiff independent of any contractual duties including, but not limited to an academic environment free of sexual hostility where sexual misconduct policies and procedures are fair and reasonable; including providing him with support through trained and non-biased administrators.

74.     Based on the aforementioned facts and circumstances, UArts has breached its duties of care owed to Plaintiff.

75.     As a direct, proximate and readily foreseeable consequence of UArts'

aforementioned conduct, Plaintiff has sustained significant damages including, but not limited to,

monetary damages, emotional distress, loss of education opportunities, and other direct and

## COUNT IV
### Defamation and Invasion of Privacy

76.     Plaintiff incorporates by reference each of the above paragraphs as if fully set

forth herein.

77.     Defendant UArts, acting through its managers, Mark Campbell and Anne

Massoni, repeated to other UArts' employees that Plaintiff had been fired for sexual harassment

and such statements were made prior to Plaintiff receiving official notice of his termination.

78.     Defendant Little falsely and maliciously stated to UArts' employees and other

third parties that she had been sexually assaulted and harassed by Plaintiff, when, in fact, she had

not.

79.     On February 22, 2018, during a photography faculty meeting prior to the SPE

National Conference to be held in Philadelphia to discuss the conference. Massoni told the

group, in response to a question from a faculty member about Professor Fogel's status, "If people

ask you about Harris at the SPE Conference, there is nothing for you say, because you don't

know anything, so change the subject." She added that "if someone wants more information you

can also refer them to the school's Title IX office." There was no legitimate need for Massoni to

have made such comments to UArts' faculty and other employees, and it was done maliciously

and without privilege in a further effort by Massoni, acting within the scope of her authority at

UArts, to further damage the reputation of plaintiff, which it did.

80.     UArts' employees, including Massoni and Christine Schaeffer, Associate Vice
President for Human Resources for UArts, and Little repeated their false and defamatory
accusations about Plaintiff to third parties, such as the Society for Photographic Education
("SPE"), and upon Professor Fogel's attempt to renew his SPE membership in October 2018,
SPE then immediately advised him that he "was not welcome at any of its professional events,"
even though he had participated in SPE events for over thirty years in a professional capacity and
was publicly recognized on numerous occasions for his volunteer service to the organization.  In
addition, Morrison also disseminated information about the accusations to third parties without
any legitimate purpose in doing so and thus exceeded the scope of any conditional privilege.

81.     The actions of defendants have damaged the reputation of plaintiff and caused
him economic and non-economic injury and damaged his personal and professional standing
within the community.

WHEREFORE, plaintiff requests that he be awarded damages in an amount to be
determined at trial, including, but not limited to economic damages, damages to physical well-
being, emotional damages, damages to reputation, loss of career prospects as well as
prejudgment interest, punitive damages, attorneys' fees, expenses, and costs, and any other relief
that the Court deems just and proper.

Respectfully submitted,

ZARWIN, BAUM, DeVITO, KAPLAN,
SCHAER & TODDY, P.C.

DAVID F. MCCOMB
Atty I.D. No.: 35754
ZACHARY A. SILVERSTEIN
Atty I.D. No.: 316491
1818 Market Street, 13th Floor
Philadelphia, PA  19103

215.569.2800; Fax  215.569.1606
Attorneys for Plaintiff
dfmccomb@zarwin.com
zsilverstein@zarwin.com

Dated:  November 28, 2018