# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| **HARRIS FOGEL** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | **NO. 18-5137** |
| | : | |
| **THE UNIVERSITY OF THE ARTS, *et*** | : | |
| ***al.*** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                **March 27, 2019**

"Me too" today reaches into a university's firing of one of its tenured professors based on sexual harassment claims against him. But maybe different than expected, these claims are not from a student or colleague. A male professor admittedly greeted a female professor from another university at a March 2016 Las Vegas conference with a kiss. Weeks later, the male professor admittedly offered his hotel key out of his pocket rather than his business card when meeting an aspiring female photographer at a Houston conference. Over twenty months later in December 2017, his longtime university employer began investigating the female professor's December 10, 2017 letter and the female aspiring photographer's December 11, 2017 letter to the male professor's university relating to his alleged conduct towards each of them in March 2016. This investigation led the university in March 2018 to conclude he "forcibly" kissed the female professor at the Las Vegas conference and harassed the aspiring female photographer weeks later at a Houston conference after she thought he was joking. The university dean then fired him in March 2018 without a hearing.

A university subject to federal civil rights law must ensure its investigation into the sexual harassment claims is free of gender bias. But this obligation becomes more acute when we learn: during the challenged investigation, the university ignored the same male professor's claims of

sexual harassment by his female supervisor at a 2015 conference; and, the university dean repeatedly expressed a personal dislike of the male professor. An investigation into sexual harassment must apply uniform standards regardless of the complainant's and accused's sex.

We are not reviewing whether the male professor engaged in the challenged conduct in March 2016 or whether his supervisor engaged in challenged conduct in 2015. Our issue focuses on the male professor's challenge to the university's investigation and allegedly defamatory statements. At this preliminary stage, we can only review the male professor's allegations to determine if he can proceed into discovery. As plead, the university's investigator failed to interview the male professor's exculpatory witnesses, did not investigate leads on possible collusion, and precluded his access to unredacted records. When, as today, the male professor sufficiently pleads the university violated his civil rights in terminating him based on an erroneous outcome theory, we allow the parties to proceed into discovery on his civil rights claim against the university.

We also allow discovery into the male professor's claims of defamation and false light against the university, his former female supervisor who allegedly harassed him in 2015, and the female professor who told a variety of persons about the male professor's sexual harassment in 2016. We dismiss the defamation claims arising from her statements initiating the investigation in December 2017 as absolutely privileged.

## I.    Professor Fogel's allegations taken as true today.

Harris Fogel worked as a tenured professor of photography at The University of the Arts in Philadelphia from some time until his termination on March 8, 2018.[1] At some point in 2015, while a professor at the school, Anne Massoni, his supervisor and the head of his department,

2

attempted to give Professor Fogel an "unwanted hug and a kiss" during a photography conference in New Orleans.[2] He did not disclose this conduct until the University began investigating him.

*Professor Little's and Ms. Autin's December 2017 claims against Professor Fogel.*

On December 10, 2017, University of the Pacific photography professor Jennifer Little wrote to the University's Title IX Coordinator Lexi Morrison claiming Professor Fogel kissed her without consent upon greeting her on an unknown day at a March 2016 Society for Photographic Education conference in Las Vegas.[3]

The next day, December 11, 2017, aspiring photographer Anne-Laurie Autin wrote Coordinator Morrison claiming Professor Fogel handed her his hotel room key card rather than business card out of his pocket after reviewing her portfolio at a March 2016 *FotoFest* conference in a Houston hotel ballroom.[4]  Ms. Autin originally considered Professor Fogel's acts as a joke.[5] But she then changed her mind and decided to report this incident twenty-one months later after Professor Little told her at some unknown time and place Professor Fogel forced himself physically on her.

In December 2017 and January 2018, the University began investigating these two claims concerning Professor Fogel's March 2016 conduct towards two different women at two different conferences. Professor Fogel suspected Ms. Autin and Professor Little colluded, but he alleges the University failed to obtain the emails between the women to investigate his collusion defense. [6]

*The University's Title IX Coordinator Lexi Morrison*
*investigates the claims against Professor Fogel.*

Coordinator Morrison began investigating Professor Little's and Ms. Autin's December 10 and 11, 2017 claims arising from Professor Fogel's March 2016 conduct. During the investigation, Professor Little claimed she told University professor David Graham about the non-consensual kiss, but Professor Graham told Coordinator Morrison he did not remember Professor Little telling

3

him about the incident.[7] Professor Little also told a group of women at the *FotoFest* conference about the kiss, but one woman in the group, Professor Jennifer Colton from Washington University, told Coordinator Morrison she did not remember Professor Little mentioning it.[8] Only Ms. Autin corroborated Professor Little's story about the non-consensual kiss.[9] Ms. Autin corroborated the story based only on Professor Little's statement to her. She did not witness the alleged kiss.

Professor Fogel alleges deficiencies in Coordinator Morrison's investigation. He alleges she failed to investigate all available evidence.[10] She failed to objectively evaluate Professor Little's credibility.[11] He claims the University failed to provide adequate notice of the charges against him, including the date, time, and location of the incidents alleged.[12] Coordinator Morrison failed to interview the entire group of women from the *FotoFest* conference to whom Professor Little reported the kiss.[13] Coordinator Morrison also failed to consider Ms. Autin's admission to *FotoFest* representative Marta Sanchez Philippe she thought "it was possible that Professor Fogel's remark about the room key was a 'joke' and that his intent was not malicious."[14] Professor Fogel gave Coordinator Morrison names of witnesses but she refused to interview them.[15]

Professor Fogel alleges Coordinator Morrison considered "unsubstantiated . . . extremely prejudicial allegations" against him.[16] For example, she relied on Professor Little's statements (1) Professor Fogel "has difficulty working with a woman in a position of authority over him," (2) other women at the *FotoFest* "had heard of Professor Fogel," and (3) Professor Fogel exhibited "typical male verbal flirting behavior."[17]

Professor Fogel alleges Coordinator Morrison accepted an unreliable explanation for why Professor Little waited to report his conduct. Professor Little waited twenty-one months to report

4

the kiss because she "tolerated" his kiss "in exchange for [Professor Fogel's] support and professional advice."[18]

Coordinator Morrison also relied on Ms. Autin's statements during the investigation (1) most female photographers at the *FotoFest* "guessed that it was Harris Fogel when [Ms.] Autin recounted her allegation that he offered her his room key," (2) an unnamed male photographer said he saw Professor Fogel acting in a "sleazy manner" with female photographers at *FotoFest*, and, (3) an unnamed female photographer told Ms. Autin Professor Fogel "was 'very flirtatious' and she thought [Professor Fogel] gave her a show 'because she was young, cute, and bubbly.'"[19]

On January 12, 2018, Professor Fogel challenged Coordinator Morrison's reliance on "gender-based stereotypical accusations" like Professor Little's claim during the investigation of "typical male verbal flirting behavior."[20] Coordinator Morrison did not seriously address his concerns.[21]

Professor Fogel alleges the University treats female complainants of sexual misconduct differently than it treats male complainants. During the investigation, Professor Fogel told Coordinator Morrison Ms. Massoni attempted to give him "an unwanted hug and a kiss" during a 2015 conference in New Orleans.[22] When he asked how "that conduct could be deemed acceptable (when done by a female) but sexual assault when done by a male," Coordinator Morrison failed to offer a "meaningful response" or initiate an investigation against Ms. Massoni.[23]

Professor Fogel also argued Coordinator Morrison failed to consider a law firm's finding "insufficient evidence" to substantiate Ms. Autin's claim of misconduct at the *FotoFest* conference.[24]

Coordinator Morrison also refused to provide Professor Fogel with a copy of her investigative report.[25] When his counsel suggested providing a redacted copy to protect witnesses'

5

identities, Coordinator Morrison still refused.[26] Coordinator Morrison also used a "preponderance of the evidence" standard rather than a "clear and convincing evidence" standard in evaluating the claims.[27] Coordinator Morrison denied him the ability to respond in writing to her report.[28] She also denied him a live hearing to present witnesses.[29]

Without a hearing, Coordinator Morrison concluded her investigation on January 23, 2018 by finding "Professor Fogel had committed serious violations of the University's Sexual Misconduct, Sexual Harassment, and Other Forms of Harassment Policy."[30]

### *The University's Dean terminates Professor Fogel.*

On March 8, 2018, the University Dean Mark Campbell terminated Professor Fogel based on Coordinator Morrison's report and unrelated performance issues.[31] On August 1, 2018, the University's Board of Trustees upheld the termination.[32] The University denied Professor Fogel's appeal of his termination.[33]

Professor Fogel alleges Dean Campbell had a "documented history of bias and hostility" against him.[34] Dean Campbell considered Professor Fogel "difficult to supervise," "not sufficiently collegial," and "obstructionist."[35]

### *Professor Fogel sues.*

Professor Fogel sued the University, his supervisor Ms. Massoni, and Professor Little. He alleges the University discriminated against him by skewing an investigative process under an erroneous outcome theory to lead to his termination. He sues the University for Title IX discrimination based on his sex under an erroneous outcome theory attacking the investigation, along with Pennsylvania state law claims of breach of contract, negligence, defamation and false light invasion of privacy. He also sues Ms. Massoni and Professor Little for defamation and false light. Professor Fogel withdrew his negligence claim.[36]

6

## II.    Analysis.

The University moves to dismiss Professor Fogel's Title IX claim but not his breach of contract, defamation or invasion of privacy claims. Professor Little moves to dismiss Professor Fogel's defamation and invasion of privacy claims. [37]

### A.    We deny the University's motion to dismiss Professor Fogel's Title IX erroneous outcome claim.

Professor Fogel sues the University for violating Title IX under an "erroneous outcome" theory. The University moves to dismiss, arguing Professor Fogel fails to state a due process claim. The University is arguing about a theory not in the case.

Under Title IX of the Education Act Amendments of 1972, Congress provides "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."[38]

While our Court of Appeals has not addressed erroneous outcome claims under Title IX, other courts of appeals, and district courts in our circuit, have carefully outlined the nature of a Title IX erroneous outcome claim.[39] In *Yusuf v. Vassar College*, the Court of Appeals for the Second Circuit explained plaintiffs claiming a Title IX violation under an "erroneous outcome" theory "must allege particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding."[40] But the plaintiff must allege more than an erroneous outcome. To survive a motion to dismiss, the plaintiff must also allege "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."[41]

District courts in our circuit have adopted the pleading standard from *Yusuf* for erroneous outcome claims under Title IX.[42] For his erroneous outcome claim, Professor Fogel must allege

he "was innocent and wrongfully found to have committed an offense."[43] He must allege particular facts casting "articulable doubt" on the accuracy of the outcome of the University's proceedings.[44]

Professor Fogel cannot survive a motion to dismiss alleging only "a procedurally or otherwise flawed proceeding that has led to an adverse and erroneous outcome combined with a conclusory allegation of gender discrimination."[45] To state a claim for erroneous outcome, Professor Fogel must also allege "particular circumstances suggesting that gender bias was a motivating factor behind the erroneous finding."[46] Allegations showing gender bias include "statements by members of the disciplinary tribunal, statements by pertinent university officials, or patterns of decision-making that also tend to show the influence of gender."[47] At oral argument, Professor Fogel's counsel conceded his erroneous outcome claim is now based on patterns of decision-making tending to show the influence of gender by focusing on the University's dismissive treatment of his claims involving his supervisor Ms. Massoni in 2015.

As the University's counsel eventually conceded in oral argument, Professor Fogel's pleading of the different treatment of Professor Fogel's claims involving his female supervisor may give rise to a claim subject to discovery. In *Doe v. The Trustees of the University of Pennsylvania*, a female student accused a male student of sexual assault leading to disciplinary proceedings and suspension from the school.[48] The male student sued the school under a Title IX erroneous outcome theory. The court found sufficient allegations of gender bias when the plaintiff alleged the University's disciplinary procedures favor female complainants and disfavor the generally-male perpetrators.[49] The plaintiff alleged the University's training materials instructed officials to believe the accuser and presume the accused's guilt—the accused usually a male.[50] The plaintiff also alleged University policy statements showing "victim-centric" approaches to sexual misconduct and an article quoting the University's President and Provost along with a study

8

showing "female students were significantly more likely to be sexually assaulted than male students."[51] Although the male student failed to allege gender-biased statements by a University representative, the court found his allegations of biased training materials and other pro-complainant bias "taken together and read in a light most favorable" to the male student supported a plausible claim for erroneous outcome.[52]

Professor Fogel claims erroneous outcome alleging the University of the Arts received "substantial federal funding" and thus Title IX applies.[53] The University denies Title IX applies but, on the present record, we must allow discovery into the specifically plead allegation of federal funding for the University. As Professor Fogel sufficiently alleges Title IX applies, we determine whether he sufficiently states an erroneous outcome claim.

After alleging Title IX applies, he alleges the University "initiated and conducted the investigation and subsequent hearing of [Professor] Little and [Ms.] Autin's complaints in a manner that was biased against [Professor Fogel] due to his sex."[54] We determine whether Professor Fogel sufficiently pleads (1) particular facts casting doubt on the accuracy of the outcome and (2) particular circumstances suggesting gender bias motivated the erroneous outcome.

### 1. Professor Fogel alleges facts casting doubt on the accuracy of the outcome of the University's disciplinary proceedings.

At this stage, Professor Fogel alleges "particular facts sufficient to cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding." He alleges a law firm investigated Ms. Autin's complaint about Professor Fogel and found insufficient evidence to substantiate her allegation.[55] He alleges Coordinator Morrison ignored "exculpatory evidence," including the law firm's conclusion and Ms. Autin's statement to Ms. Philippe "it was possible" Professor Fogel's comment about his room key was a "joke."[56]

9

Professor Fogel alleges in her letter to Coordinator Morrison, Professor Little claimed Professor Fogel "has difficulty working with a woman in a position of authority over him."[57] Since Professor Fogel and Professor Little did not work at the same school, Professor Fogel believes the comment "must have emanated from [Ms.] Massoni or someone else at [the University] as [Professor] Little would otherwise have had no way of possessing such a belief."[58]

Professor Fogel alleges Coordinator Morrison failed to provide him with adequate notice of the charges against him.[59] He alleges she failed to "analyze and document the available evidence."[60] He also alleges she failed to interview all the people to whom Professor Little reported the kiss at the 2016 *FotoFest* conference.[61] He alleges Coordinator Morrison refused to interview witnesses he provided and denied him a live hearing.[62]

In its motion to dismiss, the University does not address Professor Fogel's erroneous outcome claim. It argues a due process theory not at issue. At this stage, Professor Fogel alleges sufficient facts casting doubt on the accuracy of the University's conclusion Professor Fogel committed sexual misconduct.

### 2. Professor Fogel alleges facts suggesting gender bias was a motivating factor behind the erroneous outcome.

Professor Fogel alleges facts "suggesting that gender bias was a motivating factor behind the erroneous finding." Professor Fogel alleges Professor Little reported to Coordinator Morrison he exhibited "typical male verbal flirting behavior."[63] Professor Fogel claims gender bias in the investigation since Coordinator Morrison improperly considered and relied on these "gender-based stereotypical accusations."[64]

Professor Fogel also attempts to show gender bias arguing the University treats male and female complainants differently. For example, during the investigation, Professor Fogel reported to Coordinator Morrison his supervisor Ms. Massoni attempted to give him "an unwanted hug and

10

a kiss" at a conference in New Orleans in 2015.[65] He asked Coordinator Morrison "how that conduct could be deemed acceptable (when done by a female) but sexual assault when done by a male."[66] Coordinator Morrison did not give Professor Fogel a "meaningful response" and took no further action against Ms. Massoni.[67]

He alleges his supervisor Ms. Massoni's gender bias. Professor Fogel believes Ms. Massoni "to have been instrumental in the [University's] actions against Fogel."[68] He also alleges Ms. Massoni "repeatedly . . . demonstrated an anti-male bias toward Fogel and other males."[69] To demonstrate gender bias, Professor Fogel alleges Ms. Massoni "regularly" criticized male colleagues and employees harsher than she criticized female colleagues and students.[70] He alleges she criticized female students who "dressed in a traditional feminine way."[71] He alleges Ms. Massoni discussed her abortion and her "difficulties in dealing with males in personal relationships" with students and colleagues.[72] Professor Fogel also alleges Ms. Massoni told Professor Little there were "other complaints about Fogel" to encourage her to complain.[73]

Professor Fogel alleges sufficient facts suggesting gender bias motivated the erroneous outcome. In *The Trustees of the University of Pennsylvania*, our colleague Judge Padova found the plaintiff, despite failing to allege inculpatory statements made by University representatives, sufficiently alleged gender bias with facts showing the school "designed its disciplinary procedures to favor female complainants and disfavor the respondents, who are almost always male."[74] Professor Fogel also fails to allege statements by University representatives showing gender bias in the disciplinary proceedings. We also fail to see how Ms. Massoni's personal gender bias shows a bias in the University's disciplinary proceedings. But he does allege other facts showing gender bias in the University's disciplinary procedures. For example, he alleges Coordinator Morrison investigated Professor Little's misconduct claims against him but failed to investigate his similar

11

misconduct claim against Ms. Massoni.[75] Assuming the truth of his allegations as we must do at this stage, Professor Fogel alleges the University treats female complainants more favorably than it treats male complainants. The University does not challenge Professor Fogel's erroneous outcome claim in its motion to dismiss other than counsel's conclusory statement at oral argument Professor Fogel fails to allege gender bias.

We deny the University's motion to dismiss Professor Fogel's erroneous outcome claim.

### 3. The University incorrectly characterizes Professor Fogel's erroneous outcome claim as a Fourteenth Amendment due process claim.

The University characterizes Professor Fogel's erroneous outcome claim as a due process claim under the Fourteenth Amendment. We disagree. In his Amended Complaint, Professor Fogel alleges he "makes a claim of discrimination under the erroneous outcome theory."[76] Professor Fogel's claim is one of gender discrimination, not deprivation of due process. While he does allege the University denied him due process throughout the disciplinary proceedings, Professor Fogel alleges these instances to "cast some articulable doubt on the accuracy of the outcome of the disciplinary proceeding" as he must do to state a claim for erroneous outcome. But the claim itself is not one for deprivation of due process. We deny the University's motion to dismiss Professor Fogel's Title IX claim since Professor Fogel does not allege a due process claim.

### B. We grant in part and deny in part Professor Little's motion to dismiss Professor Fogel's defamation claim.

Professor Fogel alleges defamation against all Defendants. Only Professor Little moves to dismiss Professor Fogel's defamation claim.

To state a defamation claim under Pennsylvania law, Professor Fogel must allege: "(1) the defamatory character of the communication; (2) its publication by the defendant; (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the

12

understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication; and (7) abuse of a conditionally privileged occasion."[77] If Professor Little's statement "imputes a criminal offense, loathsome disease, business misconduct, or serious sexual misconduct, the statement constitutes defamation *per se* and proof of 'special' damages is not required."[78]

"Whether a statement is capable of a defamatory meaning is a question of law for the court."[79] A statement is defamatory if "it tends to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."[80]

Professor Fogel alleges two sets of defamatory statements: (1) statements Professor Little made to the University through Coordinator Morrison and (2) statements Professor Little made to third-party conference attendees. We address each set of statements in turn.

### 1. We grant Professor Little's motion to dismiss Professor Fogel's defamation claim for statements to Coordinator Morrison.

Professor Fogel alleges Professor Little made defamatory statements on December 10, 2017 to Coordinator Morrison:

- "[O]n some unspecified day in March 2016 Professor Fogel greeted her with a kiss upon his seeing her at the Society for Photographic Education (SPE) conference in Las Vegas, NV . . . the kiss was unwelcome and took place in the lobby of the hotel where the conference was being held"[81]

- "[Professor Fogel] has difficulty working with a woman in a position of authority over him"[82]

- "[O]ther unidentified women at the 2016 Houston FotoFest Conference had heard of Professor Fogel"[83]

13

- Professor Fogel exhibited "typical male verbal flirting behavior"[84]

Professor Little argues Pennsylvania's judicial proceeding privilege bars Professor Fogel's claims based on these statements to Coordinator Morrison. We agree. The judicial proceeding privilege bars Professor Fogel's defamation claim for statements made to the University through Coordinator Morrison.

Professor Little argues an absolute privilege applies to her statements reporting Professor Fogel's behavior to the University through Coordinator Morrison. She alleges Pennsylvania's judicial proceeding privilege applies since "the policy reasons for allowing honest and truthful statements to be made in the context of investigating a sexual harassment and assault claim must prevail."[85] Professor Fogel argues we cannot determine an affirmative defense like absolute privilege at the motion to dismiss stage.

Under Pennsylvania law, "statements made by judges, attorneys, witnesses and parties in the course of or pertinent to any stage of judicial proceedings are absolutely privileged and, therefore, cannot form the basis for liability for defamation."[86] Professor Little must satisfy two elements: (1) the allegedly defamatory statements were "issued during the regular course of the judicial proceedings" and (2) the statements were "pertinent and material to those proceedings."[87] The privilege applies to judicial and quasi-judicial proceedings.[88]

Professor Little cites *Schanne v. Addis*.[89] In *Schanne*, a former student told her friend she had been romantically involved with her high school teacher while attending the high school several years earlier. Her friend reported this to the high school, the high school held a pre-termination hearing and eventually terminated the teacher. The teacher sued the former student for defamation. Judge Brody in our district granted summary judgment for the former student on the basis absolute privilege protected her statements. Judge Brody explained Pennsylvania courts grant

14

an absolute privilege for "statements that relate to a judicial proceeding if the communications are preliminary to, instituting, or part of the proceeding."[90] Judge Brody applied the privilege because the former student's statement to her friend "served as the catalyst" for the high school's pre-termination hearing and eventual termination of the teacher.[91] Although the former student did not intend to initiate a proceeding when she talked to her friend, Judge Brody explained "the motive of the speaker . . . is entirely irrelevant for absolutely privileged statements."[92]

Our Court of Appeals vacated the grant of summary judgment after certifying a single question to the Supreme Court of Pennsylvania: "Does the absolute judicial privilege apply to an allegation of sexual misconduct against a teacher by a former student, which allegation was made prior to the commencement of any quasi-judicial proceeding and without an intent that the allegation lead to a quasi-judicial proceeding?"[93]

The Pennsylvania Supreme Court held the privilege does not apply in a situation where the former student *does not intend* to initiate a judicial or quasi-judicial proceeding against the teacher.[94] The supreme court cited evidence the former student made the allegedly defamatory statements to the friend "with no desire or expectation that the allegation she made against [the teacher] would result in proceedings of any type."[95] The supreme court explained the privilege's application to statements made before the commencement of an investigation helps "incentiviz[e] individuals to speak freely in seeking to initiate judicial or quasi-judicial proceedings."[96] But the privilege does not serve this policy when the defamation defendant does not intend to initiate a proceeding or seek a remedy.[97] The supreme court explained its rule accords with the Restatement rule for communications preliminary to proposed judicial or quasi-judicial proceedings, where absolute immunity applies "when the communication has some relation to a proceeding that is actually contemplated in good faith and under serious consideration by the witness or a possible

15

party to the proceeding."[98] The supreme court distinguished *Schanne* from cases where statements "were made in a directed effort to initiate proceedings or otherwise obtain relief from school officials for harm stemming from a school employee's alleged misconduct."[99]

Professor Fogel alleges Professor Little "initiated the process by which Professor Fogel was terminated when, on December 10, 2017, she wrote to the UArts Title IX Coordinator and Diversity Director Lexi Morrison and asserted that on some unspecified day in March 2016 Professor Fogel had greeted her with a kiss upon his seeing her at the Society for Photographic Education (SPE) Conference in Las Vegas, NV."[100] Professor Little's statements were "pertinent and material" to Coordinator Morrison's subsequent investigation and conclusions about Professor Fogel's conduct. Professor Fogel pleads Professor Little "initiated" quasi-judicial proceedings against Professor Fogel warranting application of absolute privilege. Unlike *Schanne* where the plaintiff reported misconduct to her friend without any expectation of disciplinary proceedings, Professor Little reported Professor Fogel's misconduct to his school's Title IX coordinator "initiating" an investigation against Professor Fogel. The policy rationale explained in the supreme court's opinion in *Schanne* applies here to "incentivize" individuals like Professor Little to speak freely in seeking to initiate proceedings for sexual misconduct.

Professor Fogel only argues we cannot dismiss his defamation claim at this stage based on an affirmative defense. But courts in our district have dismissed defamation claims at this stage applying Pennsylvania's judicial proceeding privilege.[101] We dismiss Professor Fogel's defamation claim against Professor Little based on statements she made to Coordinator Morrison.[102]

16

**2.   We deny Professor Little's motion to dismiss Professor Fogel's defamation claim for pre-investigation statements to third-party conference attendees.**

Professor Fogel also alleges Professor Little made defamatory statements to third-party conference attendees. He alleges Professor Little reported the forced kiss to (1) University of the Arts faculty member Professor David Graham and (2) a group of women at the 2016 *FotoFest* conference in Houston, Texas.[103] He alleges Professor Little told these third parties she "had been sexually assaulted and harassed by Plaintiff, when, in fact, she had not."[104] Professor Little raises several defenses: (1) her statements were true, (2) absolute privilege bars the claim, and (3) Professor Fogel fails to state a claim. We address each in turn.

**a.   At this preliminary stage, Professor Little fails to establish truth as defense to Professor Fogel's defamation claim.**

Professor Little argues "the truth that [Professor Fogel] sexually assaulted and harassed [her] by forcibly kissing her against her will is an absolute defense to Fogel's defamation claim."[105] Professor Little further argues Professor Fogel does not deny the forced non-consensual kiss. Professor Fogel responds it is not true he sexually assaulted Professor Little and he did not admit in the Amended Complaint he sexually assaulted her. Professor Fogel argues he pleads falsity, alleging Professor Little "falsely and maliciously stated to [University] employees and other third parties that she had been sexually assaulted and harassed by [Professor Fogel], when, in fact, she had not."[106]

While Professor Fogel appears to admit he kissed Professor Little, he does not concede a "forced non-consensual" kiss.[107] Professor Fogel's claim for defamation lies in Professor Little's statement regarding the lack of consent. To support his claim, he alleges after he kissed her, Professor Little "did not complain or say anything to Professor Fogel about his greeting her in that manner" and Professors Fogel and Little later attended public functions together.[108] Professor

17

Fogel's allegations suggest Professor Little consented to the kiss. We cannot find, based on the pleadings, Professor Little's statement of a forced, non-consensual kiss is true warranting dismissal.

Professor Little cites *Morrison v. Chatham University* to support her argument we can dismiss Professor Fogel's defamation claim at this stage.[109] In *Morrison*, the plaintiff sued a university for defamation after it reported on her transcript (1) she failed a class and (2) the university dismissed her. In her complaint, the plaintiff conceded both statements were true and did not address the university's defense of truth in her response to the motion to dismiss. The court dismissed the defamation claim, explaining "a defamation claim may be dismissed when the affirmative defense of truth is apparent on the face of a complaint."[110]

Although Professor Fogel does not deny he kissed Professor Little, it is not apparent from the face of the Amended Complaint Professor Little's statement Professor Fogel *forcibly* kissed her is true. Professor Little may develop the truth defense through discovery.

> **b.** **We deny Professor Little's motion to dismiss claims for statements to third-party conference attendees on the basis Pennsylvania's judicial proceeding privilege bars Professor Fogel's claims.**

Pennsylvania's judicial proceeding privilege bars Professor Fogel's defamation claims for statements made to Coordinator Morrison as Professor Little "initiated" disciplinary proceedings with these statements.

But we cannot make the same findings as to Professor Little's statements to third parties conference attendees because we cannot find Professor Little made these statements to initiate judicial or quasi-judicial proceedings. We will not at this stage grant absolute privilege under Pennsylvania's judicial proceeding privilege for Professor Little's statements to third-party conference attendees.

18

### c. Professor Fogel states a claim for defamation against Professor Little for the pre-investigation statements made to third-party conference attendees.

Professor Little alleges Professor Fogel fails to state a claim because he merely concludes her statements were defamatory. Professor Fogel alleges Professor Little "falsely and maliciously stated to [University] employees and other third parties that she had been sexually assaulted and harassed by [Professor Fogel], when, in fact, she had not."[111] Professor Fogel also argues allegations of a forced kiss constitute defamation *per se*, as they impute serious sexual misconduct or criminal behavior.

Professor Fogel alleges Professor Little "reported the forced non-consensual kiss to a group of women at the *FotoFest* 2016 conference in Houston, Texas, several weeks after the alleged kiss happened."[112] She also reported the forced non-consensual kiss to University professor David Graham, but Professor Graham could not remember Professor Little telling him about the kiss.[113] Professor Fogel alleges Professor Little told these third parties he "sexually assaulted and harassed her."[114]

Professor Fogel pleads the defamatory character of the statement, as allegations of a sexual assault and harassment would tend "to harm the reputation of another so as to lower him in the estimation of the community." Professor Little does not dispute the attendees understood these statements as applying to Professor Fogel. While Professor Fogel does not plead damages resulting from Professor Little's statements to third parties, Professor Fogel may establish the statements impute "serious sexual misconduct" or a "criminal offense" and constitute defamation *per se*. We deny Professor Little's motion to dismiss Professor Fogel's defamation claim for statements made to third parties.

## C. We deny Professor Little's motion to dismiss Professor Fogel's invasion of privacy claim.

Professor Fogel sues Professor Little for invasion of privacy under the theory Professor Little placed him in a false light. Professor Little argues because the truth defense applies to her defamation claim, the defense applies to her false light claim as well. To state a claim for false light invasion of privacy, Professor Fogel must allege Professor Little's statements "[are] not true, [are] highly offensive to a reasonable person, and [are] publicized with knowledge or in reckless disregard of its falsity."[115]

Professor Little repeats her truth defense in moving to dismiss Professor Fogel's false light claim. As explained, we do not dismiss Professor Fogel's defamation claim at this preliminary stage based on Professor Little's truth defense. The "truth" is not apparent from Professor Fogel's allegations. Professor Little may develop this defense through discovery.

## III. Conclusion.

In an accompanying Order, we deny the University's motion to dismiss Professor Fogel's erroneous outcome claim under Title IX. Professor Fogel's negligence claim is dismissed as withdrawn.

We grant Professor Little's motion to dismiss Professor Fogel's defamation claim for statements made to Coordinator Morrison. We deny Professor Little's motion to dismiss the defamation claim for statements made to third-party conference attendees. We deny Professor Little's motion to dismiss the invasion of privacy claims.

---

[1] ECF Doc. No. 14 ¶¶ 1, 20.

[2] *Id.* at ¶ 39.

[3] *Id.* at ¶ 11.

[4] *Id.* at ¶¶ 13-18.

[5] *Id.* at ¶ 19.

[6] *Id.* at ¶ 25.

[7] *Id.* at ¶ 23.

[8] *Id.*

[9] *Id.* at ¶ 25.

[10] *Id.* at ¶ 28.

[11] *Id.*

[12] *Id.* at ¶ 29.

[13] *Id.* at ¶ 30.

[14] *Id.* at ¶ 31.

[15] *Id.* at ¶ 43.

[16] *Id.* at ¶ 33.

[17] *Id.* at ¶ 34.

[18] *Id.* at ¶ 26.

[19] *Id.* at ¶ 35.

[20] *Id.* at ¶ 37.

[21] *Id.*

[22] *Id.* at ¶ 39.

[23] *Id.*

[24] *Id.* at ¶ 32.

[25] *Id.* at ¶ 40.

[26] *Id.*

[27] *Id.* at ¶ 41.

[28] *Id.* at ¶ 42.

[29] *Id.* at ¶¶ 42, 43.

[30] *Id.* at ¶ 20.

[31] *Id.*

[32] *Id.*

[33] *Id.*

[34] *Id.* at ¶ 44.

[35] *Id.* at ¶ 45.

[36] ECF Doc. No. 23, at p. 2.

[37] When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 262 n.27 (3d Cir. 2010)). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

[38] 20 U.S.C. § 1681(a).

[39] *Yusuf v. Vassar Coll.*, 35 F.3d 709, 715 (2d Cir. 1994); *Mallory v. Ohio Univ.*, 76 F. App'x 634, 639 (6th Cir. 2003).

[40] *Yusuf*, 35 F.3d at 715.

[41] *Id.*

22

[42] *Doe v. Rider Univ.*, No. 16-4882, 2018 WL 466225, at \*8 (D.N.J. Jan. 17, 2018); *Doe v. The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799 (E.D. Pa. 2017).

[43] *Rider Univ.*, 2018 WL 466225, at \*8 (quoting *Yusuf*, 35 F.3d at 715).

[44] *Id.* (quoting *Yusuf*, 35 F.3d at 715).

[45] *The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d at 822 (quoting *Yusuf*, 35 F.3d at 715).

[46] *Id.* at 823 (quoting *Harris v. Saint Joseph's Univ.*, No. 13-3937, 2014 WL 1910242, at \*4 (E.D. Pa. May 13, 2014)).

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.* at 823-24.

[53] ECF Doc. No. 14 ¶ 53.

[54] *Id.* at ¶ 61.

[55] *Id.* at ¶ 32.

[56] *Id.* at ¶ 31.

[57] *Id.* at ¶ 34.

[58] *Id.*

[59] *Id.* at ¶ 29.

[60] *Id.*

[61] *Id.* at ¶ 30.

[62] *Id.* at ¶¶ 42-43.

[63] *Id.* at ¶ 34.

23

[64] *Id.* at ¶ 37.

[65] *Id.* at ¶ 39.

[66] *Id.*

[67] *Id.*

[68] *Id.* at ¶ 61.

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] *Id.*

[73] *Id.* at ¶ 12.

[74] *The Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d at 823.

[75] ECF Doc. No. 14 ¶ 39.

[76] ECF Doc. No. 14 ¶ 55.

[77] *Hill v. Cosby*, No. 15-1658, 2016 WL 491728, at *2 (W.D. Pa. Feb. 9, 2016), *aff'd*, 665 F. App'x 169 (3d Cir. 2016) (citing 42 Pa. C.S. § 8343). The parties agreed at oral argument Pennsylvania law applies. At this stage, we apply Pennsylvania law to Professor Fogel's claim.

[78] *Rose v. Dowd*, 265 F. Supp. 3d 525, 531 (E.D. Pa. 2017) (citing *Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 343 (3d Cir. 2005)).

[79] *Byars v. Sch. Dist. of Philadelphia*, 942 F. Supp. 2d 552, 564 (E.D. Pa. 2013) (citing *Blackwell v. Eskin*, 2916 A.2d 1123, 1125 (Pa. Super. Ct. 2007)).

[80] *Byars*, 942 F. Supp. 2d at 563-64 (citing *Tucker v. Philadelphia Daily News*, 848 A.2d 113, 124 (Pa. 2004)).

[81] ECF Doc. No. 14 ¶ 11.

[82] *Id.* at ¶ 34.

[83] *Id.*

[84] *Id.*

[85] ECF Doc. No. 22-1, p. 10.

[86] *Schatzberg v. State Farm Mut. Auto. Ins. Co.*, 877 F. Supp. 2d 232, 246 (E.D. Pa. 2012) (quoting *Pawlowski v. Smorto*, 588 A.2d 36, 41 (Pa. Super. Ct. 1991)).

[87] *Bochetto v. Gibson*, 860 A.2d 67, 73 (Pa. 2004).

[88] *Milliner v. Enck*, 709 A.2d 417, 419 (Pa. Super. Ct. 1998) (applying absolute privilege to defamation claim when a defendant employer made statements to the Pennsylvania Department of Labor concerning the plaintiff's unemployment compensation application).

[89] *Schanne v. Addis*, 898 F. Supp. 2d 751, 755 (E.D. Pa. 2012), *vacated and remanded*, 615 F. App'x 759 (3d Cir. 2015).

[90] *Id.* (citing *Pawlowski v. Smorto*, 588 A.2d 36, 42 (Pa. Super. Ct. 1991)).

[91] *Id.* at 757.

[92] *Id.*

[93] *Schanne v. Addis*, 615 F. App'x 759 (3d Cir. 2015).

[94] *Schanne v. Addis*, 121 A.3d 942, 952 (Pa. 2015).

[95] *Id.* at 949.

[96] *Id.*

[97] *Id.*

[98] *Id.* at 950 (Comment to Restatement (Second) of Torts § 588 (1977)).

[99] *Id.* The Pennsylvania Supreme Court explained it would not determine whether the privilege applies in a case where a complainant intended to initiate a school disciplinary proceeding against a school employee.

[100] ECF Doc. No. 14 ¶ 11.

[101] *Giusto v. Ashland Chem. Co.*, 994 F. Supp. 587, 594 (E.D. Pa. 1998); *Ortiz v. Delaware River Port Auth.*, No. 09-6062, 2010 WL 1994911 (E.D. Pa. May 17, 2010).

[102] As we dismiss Professor Fogel's claim for statements to the Coordinator Morrison on the basis of absolute privilege, we do not address Professor Little's argument these statements are "non-actionable" opinions.

[103] ECF Doc. No. 14 ¶¶ 23-24.

[104] *Id.* at ¶ 86.

[105] ECF Doc. No. 22-1, at p. 6.

[106] ECF Doc. No. 14 ¶ 86.

[107] *Id.* at ¶ 23.

[108] *Id.* at ¶ 12.

[109] *Morrison v. Chatham Univ.*, No. 16-476, 2016 WL 4701460 (W.D. Pa. Sept. 8, 2016).

[110] *Id.* at *4.

[111] ECF Doc. No. 14 ¶ 86.

[112] *Id.* at ¶ 24.

[113] *Id.* at ¶ 23.

[114] *Id.* at ¶ 86.

[115] *Graboff v. Colleran Firm*, 744 F.3d 128, 136 (3d Cir. 2014) (quoting *Larsen v. Philadelphia Newspapers, Inc.*, 543 A.2d 1181, 1188 (Pa. Super. Ct. 1988)).